ALICE TOWNER *vs.* CITY OF MELROSE.

Middlesex.     December 5, 1939. — February 1, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Municipal Corporations*, Liability for tort, Liability as landowner, Maintenance of nuisance, Public playground. *Nuisance.*

Evidence that a city, in building a golf course under G. L. (Ter. Ed.) c. 45, § 14, upon land owned by it in fee, constructed a sluiceway in the earthen dam of a pond on a stream and then replaced the earth on the sides of the sluiceway, and that thereafter water broke through such earth and, carrying weeds and dirt with it, damaged an ice crop of the plaintiff in a lower pond, warranted a finding that the city was liable to the plaintiff for the damage.

That the Federal emergency relief administration under agreement with a city furnished engineers, plans and all labor for construction work on a dam of a pond forming part of a golf course built by the city on its own land under G. L. (Ter. Ed.) c. 45, § 14, did not relieve the city, which furnished the materials for the construction work and thereafter maintained the dam, from liability for damage caused by water breaking through the dam and damaging an ice crop of a lower riparian owner.

TORT. Writ in the Superior Court dated February 3, 1937.

The action was tried before *F. T. Hammond,* J. The jury found for the plaintiff on the second count of the declaration in the sum of $2,977.20, and for the defendant on the fourth count. Both parties alleged exceptions.

*E. H. R. Burroughs,* for the defendant.

*C. L. Allen,* (*W. A. Redding* with him,) for the plaintiff.

Cox, J. This is an action of tort, brought by the plaintiff, to recover for damage to her ice crop, caused by the breaking of a dam on December 7, 1935, on an artificial pond maintained by the defendant upon land owned and controlled by it, whereby dirt and other foreign substances flowed into her private pond and rendered the ice unmarketable. No question of pleading is raised. The defendant excepted to the refusal of the trial judge to direct verdicts on counts 2 and 4, to his refusal to give certain requests for rulings and to portions of the charge to the jury. Verdicts were returned for the plaintiff on the second count, and for the defendant on the fourth. The exceptions to the charge have not been argued and are treated as waived. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508.

The jury could have found that, in 1933, the board of aldermen of the defendant passed an order authorizing its park commissioners to construct and operate a municipal golf course in accordance with the provisions of G. L. (Ter. Ed.) c. 45, § 14, and that the commissioners accepted the order and "the responsibility of carrying the work to completion." The defendant, in 1935, entered into a written agreement with the Federal emergency relief administration whereby the latter was to furnish engineers, plans, and all labor to construct three sluiceways in three ponds upon the golf course, and the defendant was to furnish and pay for all materials used in the construction. On August 14, 1935, the park commission, acting under the authority of said c. 45, § 14, and in accordance with G. L. (Ter. Ed.) c. 79, and all acts in amendment and addition thereto, took in fee on behalf of the defendant the land on which the three ponds, described as Nos. 1, 2 and 3, are located.

We are not concerned with pond No. 3 which was farthest upstream upon the same natural water course as, in the following order, were ponds No. 2, No. 1, and the plaintiff's pond. Ponds No. 2 and No. 1 were each less than ten acres in area, and for many years have been used for making and harvesting ice. Different owners had built earthen dams to confine the water, and the sluiceways on these ponds were of wood set in the earthen banks. The Federal agency replaced the wooden sluiceways in the dams of these ponds, cutting out the openings where the sluiceways were, putting in cement, and then replacing the earth "up back to the sluiceway again." The sluiceway boards were set in grooves in the cement sides. On December 7, 1935, the water in pond No. 2 broke through the earthen bank at the side of the cement sluiceway about four feet down from the top of the dam. After the water passed through the hole thereby made, it went out through the regular channel, a rip-rap brook, thence through a culvert under the road into pond No. 1, travelling in all this distance along the natural water course. At that time the water in the section of pond No. 1 nearest its sluiceway was low, being fourteen inches below the top of the uppermost sluice board. Below the sluiceway of pond No. 1 there are falls, at the foot of which all the water of the course is gathered into a twelve-inch pipe that goes under ground for some distance and thence the water flows into an open brook to the plaintiff's pond. On the day of the break the water was heard "running fast over the falls between No. 1 pond and Towner Pond [the plaintiff's] . . . the water could not be heard if it hadn't been an unusual volume," and the water was about an inch over the top of the twelve-inch pipe. Within a few days after the break in the dam the water was low in ponds No. 1 and No. 2 and a "jumble of rocks . . . cluttered up one side of the outlet of No. 2 pond." On December 7 three or four inches of ice had formed on the plaintiff's pond, and her ice crop that was harvested in 1936 contained weeds, small gravel and dirt.

The defendant's principal contention is that it is not liable within the rule stated in *Bolster* v. *Lawrence,* 225

Mass. 387, to the effect that in the establishment and maintenance of purely public instrumentalities devoted to the common good it acts as an agency of the government in the performance of duties assumed solely for the benefit of the public, and is not, therefore, liable for negligence of its officers and servants where from the work done it derives no special corporate advantage, no pecuniary profit, and no enforced contribution from individuals particularly benefited by way of compensation for use or assessment for betterments. See *Kerr* v. *Brookline*, 208 Mass. 190; *Hennessy* v. *Boston*, 265 Mass. 559, 562, and cases cited. In our opinion, however, the case at bar comes within the rule that, where a municipality is owner or in control of real estate and creates or permits a private nuisance to the real property of another outside the limits of the public work, it is liable in a private action for the direct injury to the same extent as a natural person. The public use and general benefit will not justify such a nuisance to the property of another. *Nichols* v. *Boston*, 98 Mass. 39. *Miles* v. *Worcester*, 154 Mass. 511. *Jones* v. *Great Barrington*, 273 Mass. 483. See *Hill* v. *Boston*, 122 Mass. 344, 358, and cases cited; *Johnson* v. *Somerville*, 195 Mass. 370, 376; *Kerr* v. *Brookline*, 208 Mass. 190, 191, 192; *Gosselin* v. *Northbridge*, 296 Mass. 351, 352.

A private owner could be found liable upon the permissible findings in the case at bar. *Shrewsbury* v. *Smith*, 12 Cush. 177. *Wendell* v. *Pratt*, 12 Allen, 464, 471. *Bryant* v. *Bigelow Carpet Co.* 131 Mass. 491, 502. In the case last cited it was said, at page 503, that a case was presented in which each defendant was guilty of acts of negligence that contributed to cause an undue accumulation of water in the pond in question and an unsafe pressure on the retaining dam which resulted in the disaster that injured the plaintiffs, and that "The negligent acts of the two defendants combined produced the nuisance which injured them." Compare *Maynard* v. *Carey Construction Co.* 302 Mass. 530. It was a question for the jury in the case at bar as to whether the defendant was liable within the rule stated.

The circumstance that a Federal agency was involved

in the construction work does not relieve the defendant of liability. This agency and the city participated in the construction, and it could have been found that "the park commission very much had a finger in this proposition of building these dams as well as the whole construction of the golf course and all that went with it." It is a general rule that all persons who contribute to or participate in the creation of a nuisance are liable for all injurious consequences proximately resulting therefrom to individuals. "It is not necessary, where a person is charged with criminal liability for a nuisance, to show that he committed the particular act that creates the nuisance; it is sufficient if he contributed thereto." *McDonald* v. *Dundon*, 242 Mass. 229, 232. Furthermore, it could have been found that the defendant, after the construction, maintained the dam in the condition in which it gave way, under, so far as the bill of exceptions discloses, no unusual circumstances as to precipitation, flood or otherwise. *Staple* v. *Spring*, 10 Mass. 72, 74.

In the circumstances, it is not necessary to consider the effect of the evidence that on December 4, 1935, the park commission "voted to have certain rates for use of the golf links."

The only direct reference in the defendant's brief to its requests that were denied is that the judge was in error "in disallowing defendant's requests #1 and #4 to #14 both inclusive." See *Commonwealth* v. *Dyer*, 243 Mass. 472, 508; *Boston* v. *Dolan*, 298 Mass. 346, 355. Nevertheless, we have examined the requests in connection with the judge's charge, which is reported in full, and are of opinion that there was no reversible error.

The plaintiff's bill of exceptions is also before us, but at the argument her counsel stated that, if the defendant's exceptions are overruled, her exceptions need not be considered. They are, therefore, treated as waived.

*Defendant's exceptions overruled.*
*Plaintiff's exceptions waived.*